In re James David GANDARA, d/b/a Emerald Forest Construction, d/b/a Emerald Forest Construction, Corinna Carmen Gandara, Debtors.

James David Gandara, Corinna Carmen Gandara, Plaintiffs,

v.

Bitterroot Rock Products, Defendant.

Bankruptcy No. 98–32067–11.
Adversary No. 00/00026.

United States Bankruptcy Court,
D. Montana,
Butte Division.

Oct. 3, 2000.

550

Harold V. Dye, Dye & Moe, PLLP, Missoula, MT, for debtors/plaintiffs.

William R. Baldassin, Baldassin & Associates, Missoula, MT, for defendant.

## ORDER

RALPH KIRSCHER, Bankruptcy Judge.

In this adversary proceeding the Plaintiffs/Debtors seek Judgment against the Defendant Bitterroot Rock Products ("BRP") in the sum of $2,520 in funds currently held by the Ravalli County Attorney as an unauthorized post-petition transfer voidable under 11 U.S.C. § 549(a). BRP filed an answer denying all allegations of the complaint. After due notice, trial of this cause was scheduled to be held at Missoula on August 8, 2000. Harold V. Dye ("Dye"), attorney for the Plaintiffs/Debtors, appeared and stated the parties agreed to submit this matter on stipulated facts and briefs, whereupon the Court vacated the trial. The parties' stipulated facts and briefs have been filed and reviewed by the Court, together with the applicable law. This matter is ready for decision.

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). This is a core proceeding to avoid a post-petition transfer of property of the estate under § 549(a) and 28 U.S.C. § 157(b)(2). At issue is whether the Debtors may avoid under § 549(a) a post-peti-

tion transfer of $2,520 from the Debtor James David Gandara ("James") to the Ravalli County Attorney's Office and thence to BRP in return for dismissal of a felony bad check prosecution, when BRP returned the funds to the Ravalli County Attorney's office. For the reasons set forth below, Judgment shall be entered for the Plaintiffs against BRP, and the transfer of $2,520 in estate funds from Debtors to BRP through the Ravalli County Attorney is avoided under § 549(a).

## FACTS

The parties's Stipulation states that the parties agree:

1. That the following facts are true and require no proof.

1.1 Plaintiff James Gandara wrote defendant Bitterroot Rock Products a check for the sum of $2,520.00 on or about December 22, 1997, which was returned for insufficient funds ["NSF"].

1.2 Defendant turned the check into the Ravalli County Attorney[']s office on or about March 6, 1998 prior to the commencement of this bankruptcy case on July 22, 1998.

1.3 After the Defendant turned the check into Ravalli County he was scheduled as a general unsecured creditor in Schedule F [1] and received from the bankruptcy clerk's office various documents that were mailed to other creditors, including Notice of Commencement of Case, the Plan and Disclosure Statement, Ballot for voting on the Plan and Order of Confirmation.

1.4 James Gandara was informed by the Ravalli County Attorney[']s office that it would not prosecute him if he made the $2,520.00 check good.

1.5 On or about August 25, 1999, James Gandara paid the Ravalli County attorney the sum of $2,520.00. This

---

1. Since BRP was listed at Schedule F as a creditor holding a liquidated, noncontingent, undisputed unsecured claim, a proof of BRP's claim is deemed filed under 11 U.S.C. § 501 by operation of 11 U.S.C. § 1111(a). No objection to BRP's claim was filed, and thus BRP has an allowed unsecured claim.

amount was deposited into Ravalli County's account. Ravalli County remitted that sum to Defendant.

1.6 James Gandara's payment to Ravalli County of the $2,520.00 was not authorized by this or any other court.

1.7 Defendant has failed to refund the $2,520.00 notwithstanding demand having been made upon it.

2. In light of the documentation that the check was turned into the Ravalli County Attorney['])s office prior to the commencement of this case, plaintiffs withdraw their claim of Stay Violation against defendant.

Plaintiffs' remaining prayer is for judgment against Defendant avoiding the transfer and awarding Plaintiffs the sum of $2,520.00 pursuant to § 549(a).

## CONTENTIONS OF THE PARTIES

Plaintiffs contend they are entitled to judgment under § 549(a) because the transfer of $2,520 took place post-petition and was not authorized by the Code or this Court. They argue that BRP failed to satisfy its burden of showing that the transfer was authorized, and that the transfer allowed BRP to be paid ahead of the other allowed unsecured claims under the terms of Debtors' confirmed Chapter 11 Plan[2], the provisions of which bind BRP pursuant to 11 U.S.C. § 1141(a).

BRP contends that § 549(a) does not apply because: "The money was 'property of the estate' as that term was employed in § 549 only in Gandara's hands. Thereafter, it lost that status and became property of Ravalli County." Further, BRP argues that this case should be dismissed because the transfer was in payment of nondischargeable criminal restitution, to which the automatic stay should not apply because 11 U.S.C. § 362(b)(1) excepts from the stay "the commencement or continuation of a criminal action or proceeding against the debtor."

2. The Debtors' confirmed Plan pays BRP's claim in full along with the other Class 5

## DISCUSSION

Section 549(a) states:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

The burden of proof under § 549 is on the entity asserting the validity of the transfer, which in the instant case is BRP. F.R.B.P. 6001.

The parties stipulate that the payment "was not authorized by this or any other court." There being no dispute on that point, the Court turns to BRP's first argument, i.e., that the money was property of the estate under § 549 only in James' hands, and thereafter "lost that status and became property of Ravalli County". BRP fails to cite any case law, statute or rule in support of the proposition that the mere transfer of the property strips it of its character as property of the estate subject to avoidance under § 549, and the Court finds such contention to be without merit. In the first place such reasoning would lead to absurd results. If the mere transfer of property strips it of its character as property of the estate, then by definition no transfer of property would be voidable under § 549 because no transfer would involve property of the estate, and § 549(a) would have no effect. The plain language of § 549(a) is clear and authorizes a trustee to avoid transfers of property of the estate, and it must be enforced according to its terms. In re *Gruntz*, 202 F.3d 1074, 1085 (9th Cir.2000); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

claims. Debtors' Amended Chapter 11 Plan filed April 30, 1999, p. 6.

■ Second, BRP's argument runs against the definition of "property of the estate", which as defined at 11 U.S.C. § 541(a)(1) includes in the estate all legal or equitable interests of the debtor in property as of the commencement of the case. *In re Deines,* 17 Mont.B.R. 114, 117–120 (Bankr.Mont.1998); *In re Campbell (Balyeat Law Offices v. Campbell),* 14 Mont.B.R. 132, 140–41 (9th Cir. BAP 1995); *In re Contractors Equip. Supply Co.,* 861 F.2d 241, 244 (9th Cir.1988); *In re Farmers Markets, Inc.,* 792 F.2d 1400, 1402 (9th Cir.1986). In *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Supreme Court explained the breadth of § 541(a):

> [Section] 541(a) provides that the "estate is comprised of all the following property, wherever located: ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad. Most important, in the context of this case, § 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code. See H.R.Rep. No. 95–595, p. 367 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6322, 6323.

*United States v. Whiting Pools,* 462 U.S. at 204–05, 103 S.Ct. at 2313; *Deines,* 17 Mont.B.R. at 119–120.

Property of the estate also includes "[a]ny interest in property that the estate acquires after the commencement of the case." § 541(a)(7). In light of the broad scope of property of the estate under § 541(a)(1) as of the commencement of the case under the above authority, the Court finds that BRP, as the party with the burden of proof under Rule 6001, has failed its burden of showing that the $2,520 which James transferred to Ravalli County Attorney and thence to BRP was not property of the estate. The stipulated facts state that James transferred the funds to Ravalli County Attorney on August 25, 1999. The Court finds that the $2,520 which James transferred to Ravalli County Attorney and thence to BRP was property of the estate under § 541(a).

■ Furthermore, the Court rejects BRP's contention that it is somehow shielded from liability under § 549(a) because it returned the $2,520 to the Ravalli County Attorney. The Code provides at 11 U.S.C. § 550(a) that "to the extent that a transfer is avoided under section ... 549 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." The parties stipulate that BRP received the $2,520 in Debtors' funds from the Ravalli County Attorney, and therefore the Court may enter Judgment against BRP for the value of the transfer under § 550(a) as a mediate transferee, notwithstanding BRP's attempt to shield itself by depositing the $2,520 with the Ravalli County Attorney until the Court decides this adversary proceeding.

■ BRP's other argument is that James' payment to the Ravalli County Attorney of $2,520 is excepted from the automatic stay under § 362(b)(1) as a "commencement or continuation of a criminal action or proceeding against the debtor." BRP argues that the payment was for nondischargeable criminal restitution in return for dismissal of the bad check charges. This argument fails because § 549 operates independently of the automatic stay, and therefore § 362(b)(1) is no defense even if the payment otherwise was excepted from the stay under § 362(b)(1).

Section 549 allows a bankruptcy trustee to avoid all unauthorized transfers of estate property, and exists as a protection for creditors against unauthorized debtor

transfers of estate property, sometimes but not always overlapping with the automatic stay. *In re Coyne*, 17 Mont.B.R. 415, 422–23 (Bankr.Mont.1999) *(quoting In re Schwartz*, 954 F.2d 569, 573–74 (9th Cir.1992)); *see also* 5 Lawrence P. King, COLLIER ON BANKRUPTCY ¶¶ 549.02, 549.03 (15th ed.2000). With § 549 having its own independent operation and effect separate from the automatic stay, BRP's argument based on the § 362(b)(1) exception to the stay is no defense to the Plaintiffs' § 549(a) avoidance power[3]. Neither does it matter that James voluntarily paid Ravalli County attorney in exchange for dismissal. "In most circumstances, section 549 applies to transfers in which the debtor is a willing participant." *Coyne*, 17 Mont.B.R. at 423 *(quoting Schwartz*, 954 F.2d at 574); *In re Garcia*, 109 B.R. 335, 339 (N.D.Ill.1989). Finally, the fact that Plaintiffs withdrew their claim against BRP for willful violation of the stay for turning the NSF check over to the Ravalli County Attorney does not render the application of § 549 meaningless. *Coyne*, 17 Mont.B.R. at 423 *(quoting Schwartz*, 954 F.2d at 573–74). The parties having stipulated that James' payment of $2,520 to the Ravalli County Attorney and thence to BRP was not authorized by the Court, Plaintiff is entitled to Judgment against BRP in the sum of $2,520.

BRP's § 362(b)(1) argument suffers from an additional shortcoming. This Court acknowledges the State of Montana's interest in prosecuting criminals and recognizes that "[o]nce the state has made an independent decision to file criminal charges, the prosecution belongs to the government, not to the complaining witness." *Gruntz*, 202 F.3d at 1086. Thus, the State of Montana's criminal prosecution of James was excepted from the automatic stay under § 362(b)(1). The

exception covers, "from start to finish, all of the parts or proceedings that constitute a criminal action." *See In re Davis*, 244 B.R. 776, 790 (Bankr.N.D.Ill.2000).

The stipulated facts supplied by the parties do not disclose whether the felony bad check charges brought by the Ravalli County Attorney were dismissed, but BRP's brief explains that the Ravalli County Attorney dismissed the pending criminal proceeding and paid BRP the $2,520. However, when the criminal case against James was dismissed it ended, and the § 362(b)(1) exception to the automatic stay ceased to apply.

By definition, an order of dismissal is not the same thing as a "judgment" as defined by Montana's code of criminal procedure, since the order did not adjudicate guilt. *State ex rel. Torres v. District Court ("Torres")*, 265 Mont. 445, 451–52, 877 P.2d 1008, 1011–12 (1994). To equate a judgment in a criminal case with a dismissal order which does not adjudicate guilt is not technically correct. *Id.* BRP argues that this Court should not interfere with state criminal proceedings, but criminal proceedings against James were dismissed without any showing, adjudication, or admission of James' guilt[4]. *Torres*, 265 Mont. at 451–52, 877 P.2d at 1011–12.

BRP argues that the payment was restitution, and that the exception from discharge for restitution found at 11 U.S.C. § 523(a)(7) should apply, citing *State v. Woods*, 286 Mont. 355, 951 P.2d 981 (1997). Such exception, if applicable, would prevent discharge of the restitution under 11 U.S.C. § 1141(d)(2). BRP's reference to 11 U.S.C. § 1328(a)(3) is inapposite except for its reasoning that under Chapter 13, restitution is nondischargeable by specific statutory reference. However, the parties did not characterize the payment as restitution in their stipulated facts[5]. The stip-

---

3. Plaintiffs, as Chapter 11 debtors-in-possession, have all the rights and duties of a trustee by operation of 11 U.S.C. § 1107.

4. This is the only possible inference under the record before the Court, since BRP has the burden of proof under Rule 6001.

5. The record and stipulated facts include nothing indicating the circumstances under

ulated facts do not include an admission of guilt by James, and BRP's characterization in its brief of the payment of $2,520 "as and for restitution" is mere argument which is not supported by the record.

■ Restitution is a penalty which a sentencing judge shall impose when a person has been found guilty upon a verdict or plea of guilty, and the sentencing judge finds that a victim of the offense has sustained a pecuniary loss. Mont.Code Ann. ("MCA") §§ 46–18–201(1) & (5). However, this penalty of restitution as defined in MCA § 46–18–201(5) may serve a broader purpose as discussed by Justice Powell of the U.S. Supreme Court in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 362–63, 93 L.Ed.2d 216 (1986):

> In our view, neither of the qualifying clauses of § 523(a)(7) allows the discharge of a criminal judgment that takes the form of restitution. The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole. Thus, it is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant.
> ***
> Because criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate "for the benefit of" the State. Similarly, they are not assessed "for ... compensation" of the victim.

The sentence following a criminal conviction necessarily considers the penal and rehabilitative interests of the State. Those interests are sufficient to place restitution orders within the meaning of § 523(a)(7).

"The Court stated that criminal proceedings focus on the state's interests in rehabilitation and punishment, and that a restitution order imposed in a criminal proceeding operates for the benefit of the state and not as a means to compensate the victim." *** "[T]he critical issue is whether the obligation is *compensation for actual pecuniary loss.* If so, the debt is dischargeable." 4 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 523.13[1] and [2] (15th ed.2000). Under 11 U.S.C. § 523(a)(13), an order of restitution under title 18, United States Code is nondischargeable without reference to the pecuniary or nonpecuniary nature of the loss. Likewise, § 1328(a)(3) only refers to restitution, or criminal fine, without reference to the nature of the loss. The record before the Court shows that Ravalli County Attorney determined that the government's criminal prosecution of the Debtor, on behalf of all the citizens of the State of Montana, was satisfied short of a conviction simply by collecting the $2,520 and remitting it to BRP. *Gruntz*, 202 F.3d at 1086; *Davis v. Sheldon (In re Davis)*, 691 F.2d 176, 178–79 (3rd Cir.1982). Therefore, both § 523(a)(7) and *Woods* are distinguishable from the instant case by the absence from this record of an adjudication of James' guilt.

In *Woods* the defendant pled guilty and received a sentence which included restitution obligations which were nondischargeable in his chapter 7 case. *Woods*, 286 Mont. at 357, 361–62, 951 P.2d at 983, 985–86. BRP's reliance *on Woods* is unpersuasive because the record fails to show that James pled guilty, or that he was convicted

which the criminal charge was dismissed. The record contains no hearing minutes or

order of dismissal.

or sentenced to restitution, a fine or otherwise.

■ Since the record fails to show an adjudication, plea, or verdict of James' guilt prior to dismissal of the criminal proceedings, BRP failed to show the payment constitutes restitution under Montana sentencing law which would be entitled to exception from discharge or otherwise as a defense to Plaintiffs' § 549(a) action. Therefore, notwithstanding that BRP returned the $2,520 to the Ravalli County Attorney[6], Judgment will be entered for the Plaintiffs against BRP in that amount to avoid the transfer property of the estate pursuant to §§ 549(a) and 550(a).

**IT IS ORDERED** Judgment shall be entered for the Plaintiffs James David Gandara and Corinna Carmen Gandara in the amount of $2,520.00 against the Defendant Bitterroot Rock Products; and the transfer of $2,520.00 from the Plaintiff James David Gandara to the Defendant Bitterroot Rock Products through the Ravalli County Attorney's Office in exchange for dismissal of felony bad check charges is avoided pursuant to 11 U.S.C. §§ 549(a) and 550(a).

---

6. BRP argues that Plaintiffs misdrafted their remedy, and that entry of judgment against BRP would not be proper because the funds are on deposit with the Ravalli County Attorney's Office. However, it is clear that BRP intends to retrieve such funds after the conclusion of this adversary proceeding, and that would be an appropriate source of funds to satisfy Plaintiffs' Judgment against it.