FILED

01/07/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0206

DA 23-0206

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 5N

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

KATHAN DEVERNON JOHNSON,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 18-211
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Tammy Hinderman, Appellate Defender, Michael Marchesini, Assistant
Appellate Defender, Helena, Montana

       For Appellee:

              Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

              Scott D. Twito, Yellowstone County Attorney, Jacob Yerger, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  November 7, 2024

Decided:  January 7, 2025

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Kathan Devernon Johnson appeals the Thirteenth Judicial District Court's order revoking his suspended sentence. The only issue on appeal is whether the Yellowstone County District Court failed to award Johnson elapsed time credit under § 46-18-203(7)(b), MCA. We reverse and remand for the District Court to make findings and determine whether Johnson is entitled to any additional elapsed time.

¶3 On November 27, 2018, the District Court committed Johnson to the Department of Corrections for a suspended five-year term for felony strangulation and, concurrently, for one year with all but three days suspended to the Yellowstone County Detention Facility for misdemeanor partner or family member assault. The District Court imposed various probation conditions, including the requirement that Johnson must enter and complete an anger management program. On May 21, 2020, Johnson admitted to violating probation by absconding. The District Court revoked his suspended sentence, imposed a new sentence of four years and 357 days, all suspended, credited Johnson for over one year of elapsed and detained time, and reimposed the conditions of the original order.

¶4 On August 24, 2020, police arrested Johnson for aggravated assault based on acts that allegedly occurred on May 31, 2020. On August 27, Johnson's probation officer, Shaun Pisk, filed a report of violation (ROV). The ROV identified ten days that were eligible for elapsed time credit (from the May 21, 2020 day of sentencing to the May 31, 2020 alleged new offense). The State filed a petition for revocation of the 2018 suspended sentence based on the ROV. A second ROV by Pisk shows police arrested Johnson on February 19, 2021, for partner or family member assault, robbery, and sexual intercourse without consent. The State filed an amended petition to revoke Johnson's suspended sentence on February 26, 2021.

¶5 Pisk filed a third ROV indicating that Johnson was arraigned on June 16, 2022, for felony violation of an order of protection and arraigned on July 12, 2022, for felony assault with a weapon.[1] The State then filed a second amended petition for revocation. Under Pisk's recommendations in the first, second, and third reports of violation, he stated concerns about Johnson's alleged offenses stemming from violence with partners. During the revocation proceedings, the State also moved to revoke Johnson's release, thus leading to additional arrests and time in custody. The record indicates that Johnson was incarcerated at various periods throughout the revocation proceedings and that he remained incarcerated from his arrest in June 2022 until his disposition hearing on the revocation on January 26, 2023.

---

[1] The record indicates this alleged assault offense occurred while Johnson was in custody.

¶6 On December 22, 2022, the District Court held a revocation hearing. Pisk testified to the following: Johnson had been arrested on four occasions and charged with six felonies since May 21, 2020; although all charges against Johnson ultimately were dismissed, they were potentially violent actions in the community; Pisk stated he did not indicate any other conduct that was unbecoming or noncompliant in the first ROV; and the reported violations occurred on the dates Johnson was arrested.

¶7 The State asked the District Court to take judicial notice of a separate order of protection violation filed in Justice Court. Defense counsel asked the District Court to take judicial notice that all felony charges had been dismissed. The State argued that Johnson had been in violation of the conditions of his sentence since his first arrest and that his arrests and charges constituted the basis for the violations. The District Court concluded that Johnson had violated the conditions of his suspended sentence based on Johnson's arrests and charges. It found that each violation was substantial and that they became more significant as they aggregated. The court voiced concerns that each violation was connected to "a continuation of the issues that Mr. Johnson has struggled with" in certain relationships.

¶8 Relying on Pisk's recommendations, the State asked during the disposition hearing for ten days' elapsed time credit from May 21, 2020, to May 31, 2020. Defense counsel agreed to the ten days of elapsed time credit. Later in the proceedings, in a brief exchange, the District Court asked Johnson if he had completed anger management. Johnson responded that he had not, which the court reminded him was required. The District Court

4

credited Johnson with ten days' elapsed time and with 440 days for all time incarcerated. The court imposed a new sentence of two years and 352 days, with all but one year suspended, recommended pre-release, and recommended completion of anger-management and a mental health evaluation.

¶9      During the disposition hearing, the District Court reasoned that it had given Johnson various opportunities but that each alleged offense since the suspended sentence—despite being dismissed—was deeply concerning because they had to do with violence and lack of anger management in relationships.  Presumably because defense counsel agreed to the ten-day elapsed time credit, the District Court did not grant Johnson any more elapsed time, nor did it explain reasons for denying him additional credit.

¶10     On appeal, Johnson argues that the District Court failed to award him 512 days elapsed time credit under § 46-18-203(7)(b), MCA, in addition to the ten days the court awarded.  He asserts this was time that he spent in the community without a record or recollection of a violation from probation and parole, and the District Court did not state its reasons for denying credit as statutorily required.

¶11     "Calculating credit for time served is not a discretionary act, but a legal mandate." *State v. Pennington*, 2022 MT 180, ¶ 18, 410 Mont. 104, 517 P.3d 894 (citing *State v. Tippets,* 2022 MT 81, ¶ 10, 408 Mont. 249, 509 P.3d 1).  "As such, a lower court's determination of credit for time served is reviewed for legality and we exercise de novo review."  *Pennington*, ¶ 18 (citing *Tippets*, ¶ 10).  Because a court's calculation of credit affects the lawfulness of a sentence, we will review such claim even if not preserved.  *State*

*v. Souther*, 2022 MT 203, ¶ 12, 410 Mont. 330, 519 P.3d 1 (citing *State v. Lenihan*, 184 Mont. 338, 342, 602 P.2d 997, 1000 (1979)).

¶12 Under § 46-18-203(7)(b), MCA, "a district court has no discretion to deny credit for [elapsed time] served under a sentence. Rather, [elapsed] time must be credited for time served unless there is evidence in the record or in the recollection of the probation officer that the defendant committed a violation of his sentence during the relevant period." *State v. Jardee*, 2020 MT 81, ¶ 13, 399 Mont. 459, 461 P.3d 108. "[D]enial of credit for elapsed time based on 'repeated violations of terms and conditions' but 'without a connection to the claimed period'" is insufficient. *Pennington*, ¶ 28 (quoting *State v. Gudmundsen*, 2022 MT 178, ¶ 10, 410 Mont. 67, 517 P.3d 146). A court "cannot deny credit for elapsed time 'unless specific violations during the times in question are demonstrated.'" *Pennington*, ¶ 28 (quoting *Gudmundsen*, ¶ 14).

¶13 On appeal, the State primarily argues that denial of street time credit was appropriate because of Johnson's ongoing failure to complete an anger management program, which, in conjunction with the alleged offenses, was reason to credit Johnson for only ten days. In *State v. Johnson*, we upheld a District Court order denying elapsed time credit because the record contained substantial evidence of continuous violations that were specific and ongoing, including failure to participate in a treatment program or take necessary steps to find a required provider. *State v. Johnson*, 2022 MT 216, ¶ 29, 410 Mont. 391, 519 P.3d 804. The State argues that like in *Johnson*, Johnson's failure here "to attend anger management was an ongoing violation of his suspended sentence." Unlike in *Johnson*,

however, nowhere in the records or recollections of probation or parole is there any indication of Johnson's participation (or lack thereof) in an anger management course, nor did Pisk discuss it at all in his testimony. *Johnson*, ¶ 26. In fact, Pisk testified that there were no other compliance issues as of the first ROV. The probation officer, the State, and the District Court all reasoned that the first violation occurred when Johnson was arrested in August 2020, not when he allegedly committed the aggravated assault offense the previous May.

¶14 On appeal, the State relies on the brief exchange between Johnson and the sentencing judge about the anger management program. Although the transcript shows the judge was deeply concerned over Johnson's completion of anger management, he did not identify the anger management course as a basis for the elapsed time credit calculation. Instead, the court discussed it in the context of its decision to impose a sentence on revocation that was not fully suspended, as defense counsel had recommended. The court remarked that Johnson's record on probation had been "abysmal" and that he had failed to take advantage of "finding the tools" he needed to address his inability to control his anger. Had Johnson done so, the court believed, it "[w]ould have made a difference for [him]." The court told Johnson that "it is going to make a difference for you in the future too because you are going to do it . . . . This time you are going to do it." Aside from this remark about attending anger management, the State does not present an argument tying a record of "specific violations" to the court's denial of credit for the elapsed time to which Johnson asserts he is statutorily entitled. *Gudmundsen*, ¶ 14.

7

¶15 Under § 46-18-203(7)(b), MCA, "specific violations established upon 'the record or recollection of the probation officer' are necessary 'to establish a basis for denial of street time credit' for the period claimed, and must be stated by the sentencing court." *Gudmundsen*, ¶ 13 (quoting *Jardee*, ¶ 11). Pisk's recorded violations, reaffirmed by his testimony and the State's arguments at the revocation hearing, all have to do with Johnson's arrests. The State does not explain why, on its theory that elapsed time credit properly was denied based on the anger management condition, Johnson would be entitled to the ten days granted if—as the State argues—Johnson's failure was a violation for the "entirety of his suspended sentence." Instead, the State suggests that it was not "unreasonable for the court to award" ten days' elapsed time because it was what the prosecutor and Pisk asserted without objection. As noted, however, Pisk made no reference to the anger management condition in his testimony, and the State did not rely on it to seek revocation.

¶16 Johnson, on the other hand, fails to persuade us that he is entitled to 512 days— which essentially amounts to every single day that Johnson was not incarcerated or arrested on a new charge prior to sentencing. Johnson is correct that the statute allows elapsed time credit for periods after or between violations. *See Gudmundsen*, ¶¶ 4-6, 14. It also allows elapsed time credit even after the revocation petition is filed. *See Gudmundsen*, ¶¶ 5-6, 14; *see also Jardee*, ¶¶ 7, 10-11. We have, however, affirmed a district court order denying elapsed time credit when the probation record contained substantial evidence of specific and ongoing violations during the claimed period. *Johnson*, ¶ 29. At both the revocation and disposition hearings, the District Court discussed its concern that the reported

8

violations all stemmed from violence in Johnson's relationships. But neither the State nor the court identified whether there were any periods of elapsed time during which Johnson had no violations, and the judgment does not state the court's reasons for denying credit for other periods of elapsed time. As in *Johnson*, the record may provide a basis for finding ongoing violations during the period of supervision; but we are unable to discern the District Court's calculation when it did not explain its reasons.

¶17     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. We reverse and remand for the District Court to determine whether the records and recollections of probation and parole demonstrate specific violations that justify denial of elapsed time, amend its judgment to award any additional elapsed time credit, and—pursuant to § 46-18-203(7)(b), MCA—state its reasons for denial of the same.

/S/ BETH BAKER

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE